**UNITED STATES of America, Plaintiff,**

v.

**CITY OF SAN DIEGO, State of California, Defendants,**

**Sierra Club, Emily Durbin and Bruce Henderson, Intervenors.**

**No. Civ. 88–1101–B POR.**

United States District Court,
S.D. California.

June 30, 1998.

Order Denying Reconsideration
Sept. 17, 1998.

Nancy Spencer, U.S. Dept. of Justice, San Francisco, CA, Thomas Stahl, Assistant U.S. Attorney, San Diego, CA, for U.S.

Charles S. Crandall, Michael R. Harris, Richard M. Pearl, Robert L. Simmons, William M. Benjamin, San Diego, CA, for Sierra Club.

James J. Dragna, Los Angeles, CA, Ted Bromfield, Deputy City Attorney, San Diego, CA, for City of San Diego.

Jamee J. Patterson, Deputy Attorney General, State of California, San Diego, CA, for State of California.

## ORDER GRANTING PLAINTIFF–INTERVENOR SIERRA CLUB'S MOTION FOR ATTORNEY'S FEES

BREWSTER, District Judge.

## I. INTRODUCTION

Plaintiff-intervenor Sierra Club filed a motion for attorney's fees in this action pursuant to 33 U.S.C. § 1365(d) on June 20, 1997. The United States Environmental Protection Agency (the United States or EPA), the State of California (State), and the City of San Diego (City) opposed the motion. This matter came on for hearing on April 24, 1998. Upon due consideration of the moving and responding papers and the arguments of counsel, the Court hereby GRANTS Sierra Club's motion for attorney's fees.

## II. BACKGROUND

During the 1980s, the City of San Diego was a chronic violator of the Federal Water Pollution Control Act (Clean Water Act or CWA), 33 U.S.C. §§ 1251–1387. The City's violations ranged from wastewater overflows along City sewer lines to the City's failure to treat raw sewage to secondary treatment standards before discharging it into the Pacific Ocean. In 1988, the United States and the State of California[1] (State) instituted a CWA civil enforcement action against the City. By 1989, the parties were in the process of negotiating a proposed Consent Decree that would have required the City to build a number of new sewage treatment and water reclamation facilities. The new facilities purportedly would have increased the City's wastewater treatment and disposal system to adequate capacity and enabled the City to implement secondary treatment standards. As the negotiations gained momentum, the Sierra Club, which had been monitoring the progress of the case, sought to intervene as a plaintiff and block entry of the proposed Consent Decree. The Sierra Club argued that the agreement being reached between the parties violated the public interest for the following reasons:

(1) Sierra Club believed that secondary treatment standards could be attained at a lower cost and with less environmental impact by using experimental "physical-chemical" treatment methods at the existing Point Loma Wastewater Treatment Facility (the Point Loma plant), the City's main sewage treatment facility, rather than building new treatment facilities as required by the Consent Decree;

(2) The Consent Decree contained no water conservation measures, which Sierra Club believed would obviate the need for new wastewater treatment facilities;

(3) The Consent Decree required seven new water reclamation facilities but did not provide for the distribution and re-use of the reclaimed water; and

1. The State of California later re-aligned itself with the City as a defendant in March 1994.

(4) The Consent Decree required effluent to be treated with chlorine before being discharged into the ocean.

Sierra Club's motion to intervene was granted on September 20, 1989. After extensive evidentiary hearings, the Court deferred approval of the Consent Decree on June 18, 1991.

On September 11, 1991, Sierra Club filed a motion for interim attorney's fees pursuant to 33 U.S.C. § 1365(d). The Court granted this motion in part on February 6, 1992, finding that § 1365(d) allowed intervening plaintiffs in CWA actions to receive attorney's fees.

To determine an appropriate fee award, the Court placed Sierra Club's work on the case in three categories. The first category of work, for which the Court awarded fees, involved water reclamation issues. The second category of work, for which the Court held that a fee request was premature, involved the experimental use of physical-chemical treatment methods at the Point Loma plant. The Court found the test results too inconclusive at that time to justify a fee award. Finally, the Court declined to award fees for work on the penalty phase of the litigation because it found that Sierra Club had not made a beneficial contribution to that portion of the case.

The Court awarded Sierra Club an amount equal to 15% of its total reasonable fees and costs accrued as of June 18, 1991. The United States, the State of California, and the City of San Diego were held jointly and severally liable for 67⅔% of the interim fee award, and the City of San Diego was solely liable for 33⅓%. The parties eventually stipulated to a $375,406.24 lodestar, of which Sierra Club received 15%, or $56,310.93. The award was made without prejudice to future fee motions.

The Court certified the interim award of attorney's fees for interlocutory appeal pursuant to 28 U.S.C. § 1292(b). The United States and the City of San Diego appealed on the ground that as an intervenor, Sierra Club could not receive fees. Sierra Club cross-appealed the amount of the award. The Ninth Circuit, without reaching the merits of this Court's decision, held that it lacked juris-diction over the appeals under either 28 U.S.C. §§ 1291 or 1292(b), and the appeals were dismissed without prejudice.

After deferral of the Consent Decree, the Sierra Club devoted extensive efforts to developing alternate resolutions to this matter. It researched water reclamation and re-use possibilities and the effects of water conservation on wastewater volumes at the Point Loma plant. It also monitored the pilot testing of physical-chemical treatment methods at the Point Loma plant. In September 1993, Sierra Club requested that the Court hold a final hearing on the Consent Decree and that the Consent Decree be disapproved. Although the United States and the State continued to favor approval of the Consent Decree, the City changed positions and opposed the decree. The parties participated in extensive discovery, followed by thirteen days of evidentiary hearings. On March 31, 1994, the Court rejected the Consent Decree.

Subsequently, the Court issued an interim order on August 26, 1994 to address all remedial phase issues in the case pending final judgment. That order provided, among other things, construction dates for a number of projects, including the North City Water Reclamation Plant (North City plant). However, the order did not require completion of a distribution system for reclaimed water by the start-up date of the North City Plant. Without distribution pipelines, Sierra Club asserted, the reclaimed water would be wastefully discharged into the ocean. Sierra Club therefore moved to amend the interim order to provide for "distribution pipelines adequate to market not less than 9,000 acre feet per year." The Court did amend the interim order, but it did not adopt the Sierra Club's proposed amendment. Instead, the Court adopted the City's suggestion that the amended order incorporate a map setting out a backbone distribution pipeline system and specify completion dates for each segment of the pipeline project. It did not require a specific distribution pipeline capacity.

One of the most significant issues remaining in the case after rejection of the Consent Decree was whether the City should be required to treat effluent to secondary treat-

ment standards at the Point Loma plant before discharging it into the ocean. Despite substantial improvements at the Point Loma plant, due in part to the use of physical-chemical treatment methods, secondary treatment standards could not be reached. Before 1994, the EPA was allowed to waive one or more secondary treatment standards under § 301(h) of the CWA if no environmental injury would result. The parties and the Court were convinced that under the circumstances, a § 301(h) waiver would be appropriate.[2] Unfortunately, the City's prior § 301(h) request had been withdrawn years before, and by 1995, the § 301(h) waiver provision had expired.[3] Without a waiver, the City would have been forced to build an expensive and unnecessary new sewage treatment plant to comply with the CWA. To avoid this result, the parties drafted, lobbied for, and obtained passage of a bill by Congress, the Ocean Pollution Reduction Act (OPRA), which allowed the City to apply for a § 301(h) waiver. The City applied for the waiver and, with the Sierra Club's help, established in waiver permit hearings before the EPA that the Point Loma plant had achieved an 85% suspended solids removal rate, and that due to this, the City's effluent discharges did not injure the ocean environment. The City obtained a § 301(h) waiver on November 9, 1995.

The resolution of the secondary treatment issue removed a major obstacle to settling the case. The parties negotiated a complex settlement, and the final Stipulated Judgment was entered on June 6, 1997.

Sierra Club now moves for a final award of attorney's fees. It seeks $866,628.83, which represents all work done on the case, less the interim fee award. It also requests a 25% enhancement.

2. During this time, the National Science Foundation was studying the science of the CWA regulations. It issued a report which was quite favorable to the Sierra Club's and the City's position that San Diego's sewage treatment practices, improved through the use of physical-chemical methods, caused no damage to the environment.

3. The City initially received a temporary § 301(h) waiver in 1981. When the City amended its application to allow larger treatment volumes at the

## III. DISCUSSION

### A. Standard of Law

Under the CWA, a district court may award "costs of litigation ... to any prevailing or substantially prevailing party whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d).

The threshold determination is whether the moving party is a "prevailing party." *Earth Island Inst., Inc. v. Southern Cal. Edison Co.*, 838 F.Supp. 458, 463 (S.D.Cal.1993) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). A prevailing party "must have succeeded on 'any significant issue in the litigation which achieves some of the benefit'" sought. *Earth Island*, 838 F.Supp. at 464 (quoting *Hensley*, 461 U.S. at 433, 103 S.Ct. 1933).

Second, the hours claimed and the hourly rate charged must be reasonable. *See Hensley*, 461 U.S. at 434, 103 S.Ct. 1933.

Third, even if the party seeking fees has prevailed, the court must consider the results obtained by the moving party in light of the amount of fees sought and, if appropriate, adjust the amount of the award. *See id.* "This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief." *Id.* However, when a court adjusts a fee award, it must provide a "concise but clear explanation" for its decision. *Id.* at 437, 103 S.Ct. 1933.

Finally, an attorney's fee applicant seeking an enhancement of the lodestar amount must show that the enhancement is "necessary to the determination of a reasonable fee." *Blum v. Stenson*, 465 U.S. 886, 898, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984).

Point Loma plant, the waiver was temporarily denied. In 1987, the City withdrew its § 301(h) waiver application and commenced planning to comply fully with the CWA. Early in the planning process, in 1988, the United States and the State of California filed the instant lawsuit against the City. The City later relied on the proposed Consent Decree as a way of achieving CWA compliance.

## B. Sierra Club Is Not Entitled to a Blanket Fee Award.

Sierra Club argues that because the Consent Decree was rejected, it has prevailed in the case and should receive attorney's fees for all of its work. The Sierra Club objects to an issue-by-issue consideration of its fee award. It cites *Hensley* for the proposition that

> [w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee. Normally this will encompass all hours reasonably expended on the litigation.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit.

*Hensley,* 461 U.S. at 435, 103 S.Ct. 1933.

■ The Court agrees that Sierra Club is a "prevailing party" because it succeeded on significant issues and achieved the primary objective of its intervention: the rejection of the Consent Decree. However, this Court must compare the level of success obtained with the amount of fees sought to set a reasonable fee award. Failure to do so would be an abuse of discretion. *See Farrar v. Hobby,* 506 U.S. 103, 114, 113 S.Ct. 566, 121 L.Ed.2d 494 (1992).

The *Hensley* Court discussed the process of awarding attorney's fees in complex civil rights litigation

> involving numerous challenges to institutional practices or conditions. This type of litigation is lengthy and demands many hours of lawyers' services. Although the plaintiff often may succeed in identifying some unlawful practices or conditions, the range of possible success is vast. That the plaintiff is a "prevailing party" therefore may say little about whether the expenditure of counsel's time was reasonable in relation to the success achieved.

*Hensley,* 461 U.S. at 436, 103 S.Ct. 1933. In this case, the parties identified and resolved numerous problems, expending thousands of attorney hours. All parties contributed to the end result, and all prevailed in some way. On certain issues, Sierra Club's input was not useful and sometimes counterproductive. Thus, the Court finds it appropriate only to compensate Sierra Club for work on issues on which it prevailed.

## C. Issue–By–Issue Analysis

### 1. Physical-chemical treatment alternatives at the Point Loma plant

■ In this litigation, the Sierra Club introduced the possibility of using physical-chemical alternative sewage treatment methods, which were pilot-tested at the Point Loma plant. Currently, the Point Loma plant removes 85% of suspended solids from the sewage treated there, enabling the City to meet the requirements of its EPA waiver permit.

The United States and the City claim that Sierra Club should not receive attorney's fees for work on physical-chemical treatment because these methods did not enable the Point Loma plant to meet secondary treatment standards. They further argue that the performance levels required by the plant's waiver permit were achieved independently of physical-chemical treatment.

It would be unfair to discount physical-chemical treatment because it was not solely responsible for improved treatment standards or because it did not bring about secondary treatment standards that were unnecessary for waiver permit compliance. The Court finds that physical-chemical treatment contributed to the overall improvement of the Point Loma plant and its compliance with waiver permit standards. Thus, the Sierra Club's advocacy on this issue was successful, and a fee award for this work is appropriate.[4]

### 2. Water reclamation and re-use

The 1992 interim fee award compensated Sierra Club for all pre-June 18, 1991 work on water reclamation and re-use issues, to the extent that the Court found that compensation was appropriate. Sierra Club does not claim to have worked on water reclamation

---

**4.** The City, State, and the United States assert that a fee award for physical-chemical treatment work prior to June 18, 1991 would be inappropriate because the interim fee award was a final decision as to all fees incurred prior to that date. However, the order does not preclude the possibility that fees could be awarded for work done before that date.

and re-use issues after 1991. Thus, no further fees are necessary for work on these issues.

### 3. Disinfection and Ocean Plan compliance

The rejected Consent Decree would have required the City to disinfect all effluent with chlorine to comply with California's Ocean Plan. Sierra Club opposed chlorine disinfection and advocated an ozonization process instead. The City argued that ozonization was prohibitively expensive. It proposed extending the ocean outfall pipe through which treated effluent was discharged into deeper water, thus satisfying the Ocean Plan and eliminating the need for disinfection. The Court allowed the outfall extension and found chemical disinfection unnecessary both in the short-term and after outfall completion.

Sierra Club claims that it prevailed on the disinfection issue because the Court eliminated the use of chlorine. The City claims that Sierra Club did not prevail because the ocean outfall extension was approved, and disinfection as a general requirement was eliminated. The Court finds that Sierra Club did not prevail on this issue because it focused on ozonization disinfection as a way of complying with the Ocean Plan, an approach that the Court rejected in favor of the City's outfall extension proposal. Thus, awarding fees for work on disinfection and Ocean Plan compliance issues would be inappropriate.

### 4. Water conservation

■ One of the most important components of the settlement agreement in this case was a successful water conservation program. The Court finds that Sierra Club's work on this issue contributed substantially to the successful outcome of this portion of the case. Sierra Club is therefore entitled to attorney's fees for its work on water conservation issues.

### 5. The 1995 motion to amend the Court's interim order

Sierra Club claims success on its 1995 motion to amend the Court's August 1994 interim order. As the Court did not adopt the Sierra Club's requested amendment to the interim order, the Court finds that the Sierra Club did not prevail on its motion to amend the order, and a fee award for this work would be inappropriate.

### 6. Lobbying for the OPRA

Sierra Club seeks compensation for its lobbying work on the OPRA, the legislation that allowed the City to apply for a waiver of certain secondary treatment standards under § 301(h) of the CWA. The other parties contend that lobbying work is not compensable as "costs of litigation" under the CWA.

■ In *Davis v. City and County of San Francisco,* 976 F.2d 1536 (9th Cir.1992), the Ninth Circuit affirmed an award of attorney's fees under 42 U.S.C. § 1988 that included lobbying work connected with a Title VII class action. The parties in that · case reached a consent decree that eliminated certain allegedly discriminatory hiring and promotion policies for firefighters. Before the parties could seek entry of the consent decree, it was necessary for the San Francisco Board of Supervisors to approve it. Consequently, attorneys for the plaintiff class lobbied the Board of Supervisors for approval. The Court of Appeals upheld the district court's fee award for the lobbying work, stating,

> [P]revailing civil rights counsel are entitled to compensation for the same tasks as a private attorney. Where the giving of press conferences and performance of other lobbying and public relations work is directly and intimately related to the successful representation of a client, private attorneys do such work and bill their clients. Prevailing civil rights plaintiffs may do the same.

*Davis,* 976 F.2d at 1545. The Sierra Club argues, and the Court agrees, that *Davis* authorizes awarding attorney's fees for lobbying done to protect interests that are intimately related to the litigation.

The government parties contend that *Forest Conservation Council v. Devlin,* 994 F.2d 709 (9th Cir.1992), held that lobbying is not compensable as a cost of litigation. *Forest Conservation Council* was a lawsuit filed by a group of plaintiffs seeking to force the

National Forest Service (NFS) to withdraw a timber sale. Prior to filing their lawsuit, plaintiffs lobbied NFS to withdraw the sale. Hours after the complaint was filed, NFS withdrew the sale. The plaintiffs sought attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A). Contrary to the government parties' assertion, the Court of Appeals did not hold that district courts cannot award attorney's fees for lobbying work. The issue was not whether lobbying was compensable, but rather, whether attorney's fees could be awarded at all when the resolution of the controversy was traced solely to the plaintiffs' prelitigation lobbying efforts and not to the lawsuit itself. *See id.* at 712. In such a case, the court held, the plaintiff has not prevailed in the litigation and is therefore not entitled to fees. *See id.* at 713.

The government parties also cite *Portland Audubon Society v. Lujan,* 865 F.Supp. 1464 (D.Or.1994). In that case, the plaintiffs sought attorney's fees under the EAJA for lobbying against legislation that related to some of the same issues as the litigation. The district court cited *Forest Conservation Council* for the proposition that "[t]he EAJA does not serve to compensate public interest groups for their lobbying efforts, no matter how successful those efforts may be." *Audubon Society,* 865 F.Supp. at 1475 (quoting *Forest Conservation Council,* 994 F.2d at 713). In this case, the government parties take this language out of context. Neither *Forest Conservation Council* nor *Audubon Society* placed a blanket prohibition on awarding attorney's fees for lobbying. Rather, both cases concluded that public interest organizations should not be compensated for lobbying that would have been done irrespective of any pending litigation.

■ The instant case is easily distinguishable by its similarity to *Davis.* In *Davis,* the lobbying efforts at issue were necessitated by the litigation and were essential to reaching a viable settlement. Here, but for this litigation, Sierra Club would not have lobbied for the OPRA. Sierra Club's lobbying was done for the narrow purpose of solving the EPA waiver problem, which might otherwise have prevented the settlement. Therefore, the Court finds that the Sierra Club is entitled to compensation for its OPRA lobbying work.

■ The Court notes and rejects the City's argument that it should not be liable for the Sierra Club's attorney's fees for lobbying work because the City expended its own resources to lobby for the OPRA. It is not likely that Sierra Club's willingness to put its weight behind this legislation was inconsequential to its passage. When a large environmental organization supports a law that would relax CWA compliance standards for an entire metropolitan area, lawmakers are likely to notice. Furthermore, lobbyists operate on the principle that even with the most sympathetic legislator, they have a finite number of "bargaining chips." Here, Sierra Club donated some of its "bargaining chips" to the City. That the City also lobbied for the OPRA is irrelevant. The City, as the defendant in this action, was responsible for complying with the CWA, and Sierra Club helped it to do this by lobbying for legislation that was necessary for it to achieve compliance in an efficient and environmentally sound manner. Therefore, it is fair for the City to compensate Sierra Club for its lobbying work.

### 7. Administrative proceedings

Sierra Club seeks fees for participating in administrative proceedings before the EPA and the Regional Water Quality Control Board. The other parties object that these services are not compensable as costs of litigation. The Court will award attorney's fees for participation in the EPA waiver permit proceedings, but not for participation in Regional Water Quality Control Board proceedings.

Sierra Club relies on *Pennsylvania v. Delaware Valley Citizens' Council,* 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986), which involved an award of attorney's fees under the Clean Air Act. That case began as an action to force the State of Pennsylvania to implement a vehicle emission inspection and maintenance program (I/M program). A consent decree was entered, which the plaintiffs spent years monitoring and enforcing. The district court eventually awarded attor-

ney's fees to the plaintiffs, and the Third Circuit affirmed. The state objected to the awarding of fees for participation in extrajudicial proceedings. Specifically, the plaintiffs submitted comments in state rulemaking proceedings required by the consent decree, and it participated in EPA hearings when the state sought approval of an I/M program that did not comply with the consent decree. The Supreme Court found that these services were compensable because "participation in these administrative proceedings was crucial to the vindication of Delaware Valley's rights under the consent decree," and that therefore "compensation for these activities was entirely proper and well within the 'zone of discretion' afforded the District Court." *Delaware Valley*, 478 U.S. at 561, 106 S.Ct. 3088.

Sierra Club also cites *Sullivan v. Hudson*, 490 U.S. 877, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989), for the proposition that "where administrative proceedings are intimately tied to the resolution of the judicial action and necessary to the attainment of the results Congress sought to promote by providing for fees, they should be considered part and parcel of the action for which fees may be awarded." *Id.* at 888, 109 S.Ct. 2248. *Hudson* was a Social Security case in which the Supreme Court upheld an award of attorney's fees under the EAJA for representation in administrative proceedings that were mandated by a court order. The *Hudson* Court applied *Delaware Valley*, holding that awarding fees for administrative work was proper where the administrative proceedings were necessary to protect a prevailing party's rights with respect to the litigation. *See Hudson*, 490 U.S. at 889, 109 S.Ct. 2248.

■ The United States argues that *Delaware Valley* and *Hudson* are distinguishable from the instant case because the administrative proceedings in those cases were required by court orders. However, this case shares with *Delaware Valley* and *Hudson* the key fact that participation in administrative hearings was necessary to protect the moving party's rights in the litigation. *See Delaware Valley*, 478 U.S. at 558, 106 S.Ct. 3088. Sierra Club participated in the EPA waiver hearings to advocate interests that were specific to this litigation. Sierra Club's participation was necessitated by its strategic choice to help the City obtain a § 301(h) waiver and create a workable settlement. Sierra Club's interests in this litigation depended on the outcome of the waiver application process. No attorney representing a private client would allow his or her advocacy to end at the courthouse door in such a situation. In this case, as in *Delaware Valley* and *Hudson*, the outcome of the administrative proceedings was inextricably tied to the resolution of the litigation, and participation in those proceedings was necessary to advocate the prevailing parties' litigation-specific interests. Therefore, Sierra Club should receive attorney's fees for its participation in the EPA waiver permit proceedings.

■ The Sierra Club further seeks attorney's fees for its participation in Regional Water Quality Control Board proceedings during the pendency of this litigation. The justification for allowing fees for participation in EPA waiver permit proceedings does not extend to participation in Water Quality Control Board proceedings. Whereas participation in the EPA proceedings was narrowly tailored to the purpose of achieving a specific litigation goal, the Sierra Club's participation in Water Quality Control Board proceedings was for more general purposes not essential to the outcome of this case. Therefore, the Court will not award attorney's fees for the Sierra Club's participation in those state agency proceedings.

### 8. Water brief

Sierra Club's billing records reflect time spent briefing the application of state water law to the instant case (the "water brief") in 1992 and 1993. In its March 31, 1994 order rejecting the Consent Decree, the Court specifically declined to rule on the issues raised in the water brief. Therefore, the Court will not award fees for work on the water brief.

### 9. Fee petitions and appeals

■ Sierra Club seeks a fee award that includes its work on (1) the 1991 interim fee petition, (2) the appeal of the Court's interim fee award, and (3) the present fee petition. Time spent litigating fee petitions

is compensable. *See Clark v. City of Los Angeles*, 803 F.2d 987, 992 (9th Cir.1986). When a court awards fees, compensation for time spent litigating the fee petitions themselves *"must* be included in calculating a reasonable fee because uncompensated time spent on petitioning for a fee automatically diminishes the value of the fee eventually received." *Anderson v. Director, Office of Workers Comp. Programs*, 91 F.3d 1322, 1325 (9th Cir.1996) (emphasis added). Attorney's fees for time spent preparing fee petitions may be paid to attorneys who have been hired by the moving party exclusively to serve as counsel for the fee petitions so long as the hours claimed are not duplicative and the amount sought is reasonable. *See Davis*, 976 F.2d at 1544.

### a. The interim fee petition

▄▄▄▄▄ In this case, Sierra Club did not receive fees for time spent litigating the interim fee petition before this Court. Because the Court did award some interim fees to Sierra Club, it now awards fees for Sierra Club's interim fee-related work. However, the Court finds that an award of fees for all work on the interim fee petition would be excessive in light of the fact that Sierra Club received only 15% of the fees that it sought in its interim fee motion. "Fees for fee litigation are excludable, not only when the applicant has had 'extremely limited success on merits fees,' . . . but in all cases *'to the extent* that the applicant ultimately fails to prevail in such litigation.'" *Thompson v. Gomez*, 45 F.3d 1365, 1368 (9th Cir.1995) (emphasis in original; citation omitted). Therefore, the Court will compensate Sierra Club for its work on the interim fee petition in an amount equal to 15% of the fees attributable to interim fee work.

### b. The Ninth Circuit appeals

▄▄▄▄▄ Fees for the appeals in this case are not appropriate under the circumstances. "Fees may be awarded for work performed on successful appeals of the district court's award, but not for unsuccessful ones." *Thompson*, 45 F.3d at 1368–69 (9th Cir.1995). Here, both the government parties' and Sierra Club's appeals were dismissed on proce-

dural grounds, and the merits of the Court's fee award were never reviewed. Sierra Club did not succeed in either defending the Court's ability to award it fees or increasing the amount of the Court's award.

In *Friend v. Kolodzieczak*, 72 F.3d 1386 (9th Cir.1995), the Ninth Circuit compensated a prevailing plaintiff for time spent defending a fee award on appeal, even though the Supreme Court reversed and remanded the award, because the district court reinstated the fee on remand. The results of the appeals in this case, however, were not temporary setbacks along the road to an ultimately successful interim fee petition. *See Friend*, 72 F.3d at 1391. Rather, the issues attempted to be appealed were deemed nonappealable. The only position that the Sierra Club ever advocated before the Ninth Circuit was that the interim fee award was appealable, and it lost. Because Sierra Club did not succeed on the appeal, it is not entitled to fees for its appellate work.

### c. The current fee petition

The Court will award the Sierra Club attorney's fees for all of its work on the present fee petition.

## D. Reasonableness of Fees

One of the requirements for an award of attorney's fees is that the fees requested be reasonable. This is normally accomplished through the "lodestar" method, which multiplies the reasonable number of hours spent on the litigation by a reasonable hourly rate. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir.1992). The Court finds that as to the issues on which it elects to award fees, the hourly rate and number of hours claimed by Sierra Club are reasonable.

## E. Sierra Club Is Not Entitled to an Enhancement

▄▄▄▄▄ In addition to its lodestar, Sierra Club claims that it is entitled to an enhancement of 25% of its fees for work done by attorneys Simmons, Benjamin and Wharton to account for the "exceptional results" that they obtained. The government parties contend that such an enhancement would be inappropriate. The Court agrees.

In *Blum v. Stenson,* 465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), the Supreme Court, noting that the "lodestar" amount is presumed to be fully compensatory, held that an enhancement may be justified only "in the rare case where the fee applicant offers specific evidence to show that the quality of service rendered was superior to that one reasonably should expect in light of the hourly rates charged and that the success was 'exceptional.'" *Id.* at 899, 104 S.Ct. 1541. A fee enhancement is an abuse of discretion where the moving party fails to show why the complexity of the issues, the riskiness of the suit, the quality of representation, and the benefits to the client are not reflected in either the number of hours claimed or the hourly rate charged. *Id.* at 898–902, 104 S.Ct. 1541. The Ninth Circuit has subsequently held that "[t]o overcome the strong presumption that the basic fee is reasonable, the applicant must satisfy stringent requirements. Foremost, the applicant must show the requested enhancement is 'necessary to the determination of a reasonable fee.'" *Stewart v. Gates,* 987 F.2d 1450, 1453 (9th Cir.1993) (emphasis in original; citation omitted).

Here, Sierra Club bases its request for a multiplier on "the extraordinary value of the results in comparison to its very modest lodestar, a factor that is not subsumed within the lodestar." Sierra Club claims that the lodestar "is based on rates that would be charged by attorneys with *far less skill and experience, and therefore does not reflect that performance.*" (emphasis in original). Curiously, Sierra Club does not say why it used a rate that it believes is inadequate to calculate its lodestar. As Sierra Club has not carried its burden of showing why the rate used in calculating the lodestar does not reflect a reasonable fee, the Court will not grant a fee enhancement.

## F. Amount of Fee Award

At the hearing on this matter, it was determined that after deducting amounts attributable to certain work for which the Court declines to award fees, an appropriate baseline for the Sierra Club's fee award was $803,400. After giving the parties an oppor-

tunity to review the Sierra Club's billing records further and confer among themselves, the Court has determined that an additional $22,094 can be deducted to reflect other work that the Court has deemed noncompensable. Therefore, judgment shall be entered for the Sierra Club in the amount of $781,306.

## G. Allocation of Liability

Each party argues for different reasons that it should not have to pay Sierra Club's attorney's fees. The Court holds that each party shall share liability for Sierra Club's attorney's fees according to the following formula: (1) the City, the State, and the United States shall be jointly and severally liable for 25% of the Sierra Club's attorney's fee award; (2) the United States shall not be liable for more than 12.5% of the total fee award; and (3) the City shall be solely liable for 75% of the Sierra Club's attorney's fee award.

### 1. The City

The City argues that it should not be held liable in this action because even if the Sierra Club is a prevailing party, it did not prevail against the City. In *Idaho Conservation League, Inc. v. Russell,* 946 F.2d 717 (9th Cir.1991), the plaintiffs sued the EPA for its failure to promulgate water quality regulations on behalf of the State of Idaho. The suit settled when Idaho agreed to promulgate the necessary standards, and plaintiff sought attorney's fees from the EPA pursuant to 33 U.S.C. § 1365(d). The Ninth Circuit reversed the district court's award, holding that although plaintiff was a "prevailing party," it had not prevailed against the EPA because it did not obtain any relief from the EPA. *Id.* at 721. Rather, it had obtained its relief from an outside party.

Here, as to some issues, the settlement reflects positions on which Sierra Club and the City were aligned. This does not affect City's liability for Sierra Club's attorney's fees. *Idaho Conservation League* stands for the proposition that a prevailing plaintiff may not collect attorney's fees from a party from whom no relief was obtained. Here, Sierra Club did obtain relief from the

City because it was required to comply with the CWA. That the City voluntarily agreed to or even advocated certain points in the settlement does not matter.

#### 2. The State

The State of California submits that the City has agreed to indemnify it for any judgments rendered against it in this case. However, the agreement between the City and the State is not binding on this Court and is irrelevant to the instant motion. The City and State can work out their respective liability under their agreement without the input of this Court.

#### 3. The United States

■■■■■ The United States maintains, as it did with regard to the 1991 interim fee petition, that district courts are not authorized to award attorney's fees to intervenors under the CWA. The Court has already decided this issue, and that determination is the law of the case. Under the law of the case doctrine, an issue previously decided by the same court in the same case may only be reconsidered (1) where the first decision was clearly erroneous and would result in manifest injustice; (2) where there has been an intervening change in the controlling law; or (3) where evidence in a subsequent proceeding is substantially different. *See United States v. Garcia,* 77 F.3d 274, 276 (9th Cir. 1996). None of these criteria apply here. The Court stands by its previous determination that it is authorized by the CWA to award attorney's fees to Sierra Club to the extent that it finds the Sierra Club to be a prevailing party in this action.

The United States further notes that it did not oppose the Sierra Club with regard to several issues in this case that form the basis of the instant attorney's fee award, specifically (1) the OPRA lobbying, (2) the EPA permitting proceedings, and (3) the 1993 settlement negotiations between Sierra Club and the City. Thus, it argues, it should not be liable for Sierra Club's attorney's fees for work on these issues. As to the broad issue of whether the Consent Decree should have been entered, the Sierra Club clearly prevailed against the United States; therefore,

the Court may properly hold the United States liable for the Sierra Club's attorney's fees. However, the Court recognizes that the war over the Consent Decree was composed of many battles, and the United States did not fight in every skirmish. Thus, the United States' lack of opposition to the Sierra Club regarding some issues in this case is reflected by the fact that the Court has only held the United States liable for a percentage of the Sierra Club's attorney's fee award.

### H. Sierra Club Is Not Entitled to Recovery under Equitable Doctrines.

■■■■■ Sierra Club contends that if attorney's fees are not appropriate under the CWA, the Court should award them under the equitable common benefit doctrine. This issue is rendered moot by the Court's decision to award attorney's fees under the CWA. Furthermore, the common benefit doctrine has no application where, as here, the alleged beneficiaries are the general citizenry of a county. *See Southeast Legal Defense Group v. Adams,* 657 F.2d 1118, 1123 (9th Cir.1981); *Stevens v. Municipal Court,* 603 F.2d 111, 113 (9th Cir.1979).

### IV. CONCLUSION

The Sierra Club's motion for attorney's fees is granted. Sierra Club shall receive an award of $781,306. The City shall be solely liable for 75% of this amount. The United States, the State, and the City shall be jointly and severally liable for 25% of this amount, but the United States shall not be required to pay more than 12.5% of the total ($781,306) award.

IT IS SO ORDERED.

**ORDER (1) DENYING CITY OF SAN DIEGO'S MOTION FOR RECONSIDERATION, (2) DENYING SIERRA CLUB'S MOTION FOR RECONSIDERATION, AND (3) CLARIFYING THE COURT'S JUNE 30, 1998 ORDER.**

### I. INTRODUCTION

On July 28, 1998, Defendant City of San Diego ("City") filed a motion for reconsidera-

tion and/or clarification of the Court's June 30, 1998 order ("the Order") granting Plaintiff-intervenor Sierra Club's motion for attorney's fees under 33 U.S.C. § 1365(d). Sierra Club filed its own motion for reconsideration of the Order on July 30, 1998. Upon due consideration of the moving and responding papers and for the reasons set forth below, the Court hereby DENIES the City's motion for reconsideration and DENIES the Sierra Club's motion for reconsideration. However, the Court will clarify the Order.

## II. BACKGROUND

The complete background of this case is set forth in the Order and need not be rehashed here. On June 20, 1997, Plaintiff-intervenor Sierra Club filed a motion for attorney's fees pursuant to 33 U.S.C. § 1365(d). After full briefing, the Court held a hearing on April 24, 1998. At the hearing, the Court announced that it would grant Sierra Club's motion, but that it would adjust the fee requested to reflect a reasonable fee in light of the unique and complex resolution reached in this case.

Sierra Club requested a total fee of $866,-628.83, which represented all of its work on the case, minus the interim fee award that it received in 1992. Additionally, Sierra Club sought a 25% enhancement to reflect the quality of the results that it obtained in the case, plus a "delay enhancement" to reflect the interest attributable to the elapsed time between the accrual and award of its fees.

Unfortunately, some of the issues that the Court considered essential to its ruling were not discussed, i.e., precisely why the Court was using an issue-by-issue method for adjusting Sierra Club's fee and which specific work was to be emphasized in calculating the total. The Court stated at the hearing that it would decrease the $866,628.83 requested by the Sierra Club by the amounts attributable to work on the following issues: (1) Sierra Club's application for a temporary restraining order to enjoin the Mexican–American outfall pipe,[1] (2) appellate work, and (3) non-water conservation work during

the penalty phase of the case. The parties were ordered to meet and confer to review Sierra Club's billing records and submit a final amount to the Court. The Sierra Club subsequently informed the Court that the parties had agreed to a total of $781,306. Although the City sent the Court a letter stating that it did not consent to that number, it did not file a formal objection.

At the hearing, the Court initially stated that it wanted to make the parties jointly and severally liable for the judgment in the following proportions: City—75%, State/United States—25%. Later in the hearing, counsel asked the Court how whether its allocation of liability was affected by the City's agreement to indemnify the State for any fees awarded against it. The Court answered that it intended to ensure that the City was ultimately responsible for 75% of Sierra Club's fees and that the United States was ultimately responsible for 25% of the fees. Therefore, the Court stated that liability would be allocated severally, 62.5% to the City, 12.5% to the State, and 25% to the United States.

On June 30, 1998, the Court issued its Order granting Sierra Club's motion for attorney's fees in the amount of $781,306. However, the Order stated that Sierra Club's requested fee was being decreased to reflect work on the following issues: (1) water reclamation and reuse, (2) disinfection/Ocean Plan, (3) motion to amend the Court's August 1994 interim order, (4) Regional Water Quality Control Board administrative proceedings, (5) appellate work, and (6) a state law "water brief" drafted to oppose the original Consent Decree. The award was also to include an amount equal to 15% of Sierra Club's reasonable attorney's fees for work on the 1992 interim fee petition and all of its fees for work on the final fee petition.

The City moves to reconsider (1) the amount of the award in light of the additional issues targeted for deduction in the Order and (2) the allocation of liability in the Order. The Sierra Club moves to reconsider the

---

1. Also known as the "Big Pipe," the joint Mexico–United States sewage treatment plant and outfall pipe that was eventually built at the border was not subject to the City's jurisdiction and was not at issue in this case.

Court's implied ruling that it would not receive an enhancement for delay.

## III. DISCUSSION

### A. Standard of law

Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a judgment or order for:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

■■■ The Ninth Circuit has instructed that "[i]n determining whether Rule 60(b) applies, courts should be mindful that the rules are to be construed to achieve the just determination of every action." *Rodgers v. Watt,* 722 F.2d 456, 459 (9th Cir.1983). However, there is also a compelling interest in the finality of judgments that should not be disregarded lightly. *Id.* Reconsideration under Rule 60(b) is appropriate if "the district court (1) is presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." *School Dist. No. 1J, Multnomah County v. AC and S, Inc.,* 5 F.3d 1255, 1263 (9th Cir.1993), *cert. denied,* 512 U.S. 1236, 114 S.Ct. 2742, 129 L.Ed.2d 861 (1994). Here, the parties have presented no new evidence or intervening changes in the controlling law. Thus, the Court must determine whether it has committed clear error or created a manifestly unjust result.

### B. The City's Motion for Reconsideration

The City moves to reconsider the total amount of the fee award and the allocation of liability among the parties.

### 1. Adjustment to fee award

The Order stated that the Court wished to exclude from Sierra Club's fee award all amounts reflecting work done on five issues that were not mentioned during the hearing: (1) water reclamation and re-use, (2) disinfection/Ocean Plan, (3) motion to amend the Court's August 1994 interim order, (4) Regional Water Quality Control Board administrative proceedings, and (5) the state law "water brief." The City asks the Court to decrease Sierra Club's fee award further to exclude the work on these issues.

The Sierra Club opposes any further adjustment of its fee award, arguing that it should have received its entire fee request, plus enhancements for delay and quality of results and that therefore, a further decrease of its award would add insult to injury. The Sierra Club opposes the Court's issue-by-issue analysis of Sierra Club's fee request set forth in the Order. However, even under the issue-by-issue analysis used in the Order, the Sierra Club alleges that it prevailed on some of the issues identified by the Court as grounds for deduction. For the Sierra Club's benefit, the Court will clarify the logic behind the Court's issue-by-issue determination of Sierra Club's fee. The Court will further explain why it does not choose to make any further downward adjustments to Sierra Club's fee despite the additional issues discussed in the Order.

#### a. Clarification of the Court's methodology

In the Order, the Court held that the Sierra Club was not entitled to a blanket fee award reflecting all of its work on the case. The logic behind this holding was that although the Sierra Club was a prevailing party, it was not the only prevailing party. In fact, as the Court stated at the hearing and in the Order, all parties in this case prevailed to some extent because all benefitted from and contributed to the settlement reached. In light of the atypical outcome in this case, the Court has determined that a fee reflecting all of Sierra Club's work in the case would not be reasonable. The Court further

decided to set a reasonable fee by evaluating the Sierra Club's level of success on various portions of the litigation, awarding fees based on work that the Court found contributed to the final result and adjusting Sierra Club's fee request downward to reflect work that either contradicted or did not promote the resolution reached. This seemed to the Court to be a more thoughtful, albeit more difficult, method of adjustment than reducing Sierra Club's fee by an arbitrary percentage.

The Sierra Club opposes the issue-by-issue method because it mistakenly thinks that the Court is conflating the issues of whether Sierra Club prevailed in the litigation as a whole and whether the time expended by its attorneys on various tasks was reasonable. The Court fully recognizes that Sierra Club is one of the prevailing parties in this litigation and that all of its attorneys' work on this case may properly be submitted as part of its fee request. The Court is simply adjusting that total request to reflect Sierra Club's relative success in the case. The issue-by-issue method set forth in the Order is the way that the Court has chosen to make that adjustment.

Sierra Club states that the Court's method for determining a reasonable fee in this matter is "fundamentally contrary to the Supreme Court's seminal decision in *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)," its progeny, and "the purposes of the Clean Water Act's fee-shifting statute." Contrary to Sierra Club's accusations, the Court is not "bucking" precedent in this matter. Rather, it is doing exactly what *Hensley* and its progeny require and the Sierra Club repeatedly urges: assessing the reasonableness of the fee request in light of Sierra Club's overall success in the litigation. The Court's adjustment method does not seem to the Court to be an abuse of discretion; no published decisions either advocate or warn against such a process, probably because no published decisions involve a case quite like this one. Therefore, the Court will not alter the methodology behind its fee award. However, the Court is equally disinclined to make any additional downward adjustments to Sierra Club's award.

### b. The excluded issues do not affect the Court's determination of a reasonable fee

In the process of ruling on the City's motion for reconsideration, the Court has re-examined the five issues discussed in the Order but not mentioned in the hearing. Although the Court stands by its evaluation of Sierra Club's success on the various issues presented in this case, it feels that the $781,306 fee award stated in the Order is still a reasonable fee. The Court admits surprise at this number given its initial inclination to award a much smaller amount, perhaps one-third the size of the fee stated in the Order. However, given the Sierra Club's success on the macro-issue of whether the Consent Decree would be rejected, it feels that a larger fee is merited despite the fact that Sierra Club's input on a number of micro-issues did not help the Court to reach the outcome ultimately attained in this case.

It was never the Court's intention to create a war of the balance sheets with its issue-by-issue analysis of Sierra Club's relative success. Rather, the Court was aiming for a number that generally reflected its impression of Sierra Club's performance in the case, a number that seemed, in the words of the Clean Water Act's fee-shifting statute, "appropriate." The Court believes that the whole of Sierra Club's work in this case is worth more than the sum of its parts. In other words, although the mathematical total of the dollar values attributable to the work upon which the Court has based its fee award is less than $781,306, the Court feels that $781,306 is an appropriate fee under the circumstances. It is simply impossible to force a subjective impression of Sierra Club's influence in this litigation to be accurately reflected in an objective tally of numbers. Therefore, the Court will not make any further adjustments to the fee award stated in the Order. However, for purposes of clarification, the Court will briefly re-visit the issues that Sierra Club so bitterly argues should have been included in the Court's estimation of its fee.

### i. Water reclamation and reuse

 In the Order, the Court stated that Sierra Club had already been compensated

via the 1992 interim fee award for all relevant work on water reclamation and reuse issues. This was not quite accurate. The Court recognizes that after approval of the Consent Decree was deferred in 1991, Sierra Club continued to research water reclamation and reuse issues. However, in the Court's view, this work was not nearly as helpful to the Court as the water reclamation and reuse work done prior to deferral. Once the Court was convinced of the merits of Sierra Club's water reclamation and re-use arguments, further advocacy on these issues did not substantially change the course of the litigation. The work was not irrelevant, but neither was it very helpful.

### ii. Disinfection/Ocean Plan compliance

The Consent Decree would have required the City to disinfect its effluent through a chlorination/dechlorination process before discharging it into the ocean. The Sierra Club sought to stop the use of chlorine for disinfection. The issue was resolved by allowing the City to extend its ocean outfall into deeper water, obviating the need for disinfection. The Sierra Club sought to require the City to use an ozonization disinfection process until the extension was completed, but the Court held that disinfection during completion was unnecessary. In the Order, the Court excluded the Sierra Club's work on this issue for fee adjustment purposes because it perceived the Sierra Club's focus to have been on requiring ozonization rather than on the solution reached, the ocean outfall extension.

■ The Sierra Club now submits declarations saying that it supported the City's request to extend the ocean outfall, that it merely wished to require ozonization until the extension was completed, and that its main goal was stopping chlorination, which it succeeded in doing. Although the Court recognizes that Sierra Club did support the outfall extension, it still does not think that Sierra Club's support made any difference in terms of its decision to allow the outfall. The Court was inclined to allow the outfall before the Sierra Club chimed in. Furthermore, the Court directly rejected Sierra Club's position that ozonization disinfection should be

required before completion of the outfall. Therefore, the Court stands by its evaluation of Sierra Club's work on the disinfection/outfall issue.

### iii. 1995 motion to amend the interim order

■ In 1995, the Sierra Club became concerned that the interim order issued after the Court denied approval of the Consent Decree did not require a distribution system for the reclaimed water recovered by the North County Reclamation Plant. It tried to persuade the City to stipulate to an amendment that required the construction of "distribution pipelines adequate to market not less than 9,000 acre feet per year." The City did not stipulate, so Sierra Club made a motion to amend the interim order. The Court amended the interim order, but not with the specific language sought by the Sierra Club. Rather, it adopted an amendment suggested by the City that incorporated a map of the proposed distribution system and completion dates for various segments of the project. The Court stated in the Order that it would not include fees for Sierra Club's work on the motion to amend the interim order because it did not feel that the Sierra Club prevailed on that issue.

The Court stands by its finding, with a minor modification. Although the Court is aware that the incorporation of a distribution system into the interim order was more important to the Sierra Club as a general principle than the specific language that it advocated, the Court does not believe that Sierra Club's intervention on this issue appreciably changed the outcome of the case. The City had already planned the North County Reclamation Plant and its accompanying distribution system. Although the system was not part of the interim order, the City did not change its plans based on any actions taken by the Sierra Club. The Sierra Club's motion was superfluous, so Sierra Club's work on the motion has not been emphasized in the Court's fee determination calculus.

### iv. State administrative proceedings

The Court held that Sierra Club should be compensated for appearances in EPA administrative proceedings, which it made to en-

courage the EPA to grant the City a waiver of secondary treatment standards. However, the Court specifically excluded Sierra Club's appearances before the Regional Water Quality Control Board (RWQCB) from the basis of its fee award. Sierra Club submits declarations that its RWQCB appearances were motivated by the same impetus as its EPA appearances.

The Court continues to maintain that the RWQCB proceedings were distinguishable from the EPA proceedings and that, therefore, the same justification for awarding fees for the EPA work does not exist for the RWQCB work. The RWQCB proceedings were conducted for the purpose of deciding whether the City would be fined for operating a sewage treatment plant that did not comply with all secondary treatment standards without a permit from the EPA. The City was in the process of taking the steps necessary to obtain its permit. In the interim, the City and the Sierra Club appeared before the RWQCB to oppose any attempt by the RWQCB to fine the City. This goal differs from that underlying Sierra Club's work before the EPA. Whereas before the EPA., the Sierra Club was urging an administrative body to change its regulatory requirements for the specific purpose of attaining the outcome reached in this case, the RWQCB proceedings involved persuading the Board not to punish the City under its existing regulations. The Court feels that this goal, unlike the goal of the EPA work, was not inextricable from the outcome reached in this litigation and for that reason should not be a factor in the Court's determination of a reasonable fee.

### v. Water brief

The "water brief" was prepared by Sierra Club to set forth an alternative state law theory as a potential ground for rejecting the Consent Decree. Essentially, the state law grounds were that the California Constitution sets forth a general policy that conserving water is a priority of the state. *See* Cal. Const. Art. X § 2. Sierra Club asserts that its work on the water brief should have been included in the Court's fee determination because the brief was reasonably submitted as an alternative ground for promoting a suc-

cessful claim: Sierra Club's bid to reject the Consent Decree.

The Court acknowledges that "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the Court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee." *Hensley v. Eckerhart*, 461 U.S. 424, 435, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). However, the Court does not discount the water brief because the state law grounds asserted therein were rejected or not reached. Rather, the Court believes that the water brief was at most tangentially relevant to the Court's decision because it merely stated the obvious: in a region where water is scarce, wasting water is not in the public interest. The Court knew this as a matter of common sense before the Sierra Club ever wrote the water brief. Therefore, the Court did not emphasize the water brief in its determination of Sierra Club's fee.

### 2. Allocation of liability

The Court will rectify the discrepancy between the allocation of liability described at the hearing and set forth in the Order by making the following correction. The City, the State, and the United States shall be jointly and severally liable for Sierra Club's entire fee. The allocation of liability among the parties shall be 62.5% to the City, 12.5% to the State, and 25% to the United States. This allocation fully reflects the Court's final intent.

### C. Sierra Club's Motion for Reconsideration

Sierra Club moves the Court's failure to address in the Order the issue of whether Sierra Club should receive a "delay enhancement" to account for the time lapse between when the attorneys rendered their services and when they receive payment. The Court stated in the April 24, 1998 hearing that it would not award a delay enhancement on top of Sierra Club's fee award, but it did not elaborate further. The Court wishes to clarify that after the April 24, 1998 hearing but before issuing the June 30, 1998 Order, it gave further consideration to Sierra Club's position expressed in its moving papers and

at the hearing that it should receive a delay enhancement. The Court's final fee of $781,-306 incorporates an appropriate enhancement for delay. Finally, although interest may not be awarded against the federal government, *see Library of Congress v. Shaw*, 478 U.S. 310, 316, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), the Court determined the United States' proportionate liability for Sierra Club's fee in light of the fact that the United States cannot be charged for any interest.

### IV. CONCLUSION

The City's and the Sierra Club's motions for reconsideration of the Court's June 30, 1998 Order are both DENIED.

The Court hereby changes the allocation of liability described in the June 30, 1998 Order to joint and several liability, 62.5% to the City, 12.5% to the State, and 25% to the United States.

The Court notes that its $781,306 fee award to the Sierra Club includes the prior interim fee award of $56,310.93, along with reasonable fees for Sierra Club's work on the interim and final fee petitions. Furthermore, the Court recognizes that the Sierra Club has had to expend additional attorney hours in opposing the City's unsuccessful motion for reconsideration and in obtaining clarification of the Court's intention regarding whether Sierra Club's fee award includes a delay enhancement. Accordingly, the Court will add a reasonable fee of $10,000 to Sierra Club's total fee to reflect work done on the instant motions for reconsideration. Thus, Sierra Club's total fee award stands at $791,360.

IT IS SO ORDERED.