**FOREST CONSERVATION COUNCIL, an unincorporated Oregon association; Umpqua Watersheds; John Talberth, an individual and citizen of the state of Oregon, Plaintiffs–Appellants,**

v.

**Robert J. DEVLIN, in his official capacity as a supervisor; Umpqua National Forest; F. Dale Robertson, in his official capacity, Defendants–Appellees.**

No. 91–35680.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1992.

Decided June 4, 1993.

Ralph Wilborn, Wilborn & Wilborn, Eugene, OR, for plaintiffs-appellants.

Katherine W. Hazard, U.S. Dept. of Justice, Environment and Natural Resources Div., Washington, DC, for defendants-appellees.

Before: O'SCANNLAIN and RYMER, Circuit Judges, and ZILLY,* District Judge.

O'SCANNLAIN, Circuit Judge:

Appellants, ("Forest Conservation"), filed a lawsuit seeking the withdrawal of an advertised timber sale. The sale was withdrawn within hours of the filing of the suit. Forest Conservation now seeks attorneys' fees. We must decide whether Forest Conservation is a prevailing party where they concede that their pre-litigation efforts, rather than filing the lawsuit, caused the withdrawal of the sale.

* The Honorable Thomas S. Zilly, United States District Judge for the Western District of Washington, sitting by designation.

## I

On July 20, 1990, pursuant to 36 C.F.R. § 223.80, Forest Service personnel at Umpqua National Forest published notice of the Calapooya Timber Sale. The Department of the Interior and Related Agencies Appropriations Act, 1990, Public Law No. 101–121, § 318(g)(1), 103 Stat. 701, 745–50, requires that any challenge to a timber sale must be filed in federal district court within fifteen days of the initial advertisement of the sale.

In the days before that deadline, several people associated with Forest Conservation contacted the Forest Service with specific concerns about the validity of the sale. On July 23 or 24, John Talberth, one of the appellants, contacted Barbara Fontaine, a Forest Service biologist, and expressed concerns about the impact of the sale on spotted owls and the adequacy of stream-side buffers. Fontaine also talked with Mac Mills of the Steamboaters, an environmental organization concerned with water quality, about soil instability. On July 26, 1990, Talberth again discussed with Fontaine his concerns about the sale.

On August 1, Christopher Frissell, a member of the research faculty at Oregon State University and an expert witness for Forest Conservation, contacted Fontaine with concerns about soil instability and stream-side buffers. On the same day, Fontaine talked with District Ranger Ned Davis. Later on that day, Fontaine and Davis met with Mills to discuss the sale. Fontaine and Davis told Mills that they "would try to get a soil scientist out to the concern areas and that [they] would also check the buffers or lack thereof."

On the morning of Friday, August 3, 1990, Forest Conservation held a press conference to announce that they were filing suit later in the day. Forest Supervisor Robert Devlin apparently learned about the announcement from members of the media. At about 4:00 p.m., the plaintiffs filed a complaint in the federal district court. Between 4:00 and 5:00 p.m. the same afternoon, District Ranger Davis called Devlin to recommend that he cancel the advertisement for the sale. By the next morning, Saturday, August 4, 1990, Devlin had decided to withdraw the advertised sale. Notice of the withdrawal was published on Tuesday, August 7, 1990.

## II

 We review the district court's decision to deny fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A), for an abuse of discretion. *Bullfrog Films, Inc. v. Wick*, 959 F.2d 782, 784 (9th Cir.1992). "The district court abuses its discretion when its decision is based on an erroneous conclusion of law or when the record contains no evidence on which [it] rationally could have based that decision." *Williams v. Bowen*, 966 F.2d 1259, 1260 (9th Cir.1992) (internal quotation omitted). We review the district court's interpretation of the EAJA de novo. *Merrell v. Block*, 809 F.2d 639, 640 (9th Cir.1987).

 If the filing of Forest Conservation's lawsuit "was at least a material factor or played a catalytic role in bringing about the desired result," Forest Conservation would be a prevailing party for purposes of the EAJA. *See Oregon Envtl. Council v. Kunzman*, 817 F.2d 484, 496 (9th Cir.1987) (internal quotations omitted). Our inquiry is whether there was a "clear causal relationship between the litigation brought and the practical outcome realized." *Sablan v. Department of Finance*, 856 F.2d 1317, 1324 (9th Cir.1988) (internal quotations omitted). In making that inquiry, the district court concluded that Forest Conservation's pre-litigation activities, and not its lawsuit, led to the withdrawal of the timber sale. The court found that Forest Supervisor Devlin made his decision to withdraw based solely on District Ranger Davis's recommendation.[1] According to the district court, Forest Conservation's lawsuit was not a catalytic factor in the decision.

On the other hand, Forest Conservation points to testimony that Davis was aware that opponents of the sale were prepared "to appeal" it.

---

1. From the record, it is not clear whether Davis knew that a lawsuit was about to be filed. He testified at the evidentiary hearing that he was unaware of the fifteen day limit for filing suit.

Nevertheless, Forest Conservation argues that, because only Forest Supervisor Devlin had the authority to cancel the sale and because he was aware of the lawsuit before he cancelled the sale, he therefore must have done so "under the pressure of the lawsuit." *See Hewitt v. Helms,* 482 U.S. 755, 761, 107 S.Ct. 2672, 2676, 96 L.Ed.2d 654 (1987). However, that Devlin may have been aware of the lawsuit before he made his decision does not prove that the district court's interpretation of the events is clearly erroneous. *See Braafladt v. Board of Governors of Or. St. Bar Ass'n,* 778 F.2d 1442, 1444 (9th Cir. 1985) ("Chronological events are important, although not a definitive factor, in determining whether or not a defendant can be reasonably inferred to have guided his actions in response to a plaintiff's lawsuit."); *American Constitutional Party v. Munro,* 650 F.2d 184, 188 (9th Cir.1981) (a causal relationship between a lawsuit and the relief received requires more than knowledge that litigation may occur).

Whether the requisite causal connection existed between the lawsuit and the result is a factual question for the district court. Even if Devlin was aware of the filing of the lawsuit on Friday afternoon, prior to making his decision on Saturday morning, there is evidence in the record upon which the district court could have rationally based its finding that there was no causal nexus between the filing of the lawsuit and Devlin's decision.

As in *Braafladt,* "the district court was presented with the difficult task of choosing between two interpretations of the same sequence of events. 'Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.'" *Braafladt,* 778 F.2d at 1444 (quoting *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)). In this case, Forest

Conservation has made our review of the district court's findings easier, for Forest Conservation conceded at oral argument that its pre-litigation activities, rather than its lawsuit, led to the withdrawal. Accordingly, we must conclude that the district court did not abuse its discretion in finding that Forest Conservation's lawsuit did not precipitate the cancellation of the advertised sale.

### III

■ Forest Conservation asks this court to extend the definition of prevailing party under the EAJA to allow for the award of fees where a party's pre-litigation activities were solely responsible for bringing about the desired result. We decline to do so.

"The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute." *Texas State Teachers v. Garland Indep. School Dist.,* 489 U.S. 782, 792–93, 109 S.Ct. 1486, 1493–94, 103 L.Ed.2d 866 (1989). The purpose behind the EAJA is "to diminish the deterrent effect of seeking review of, or defending against governmental action because of the expense involved in securing the vindication of . . . rights." *Sullivan v. Hudson,* 490 U.S. 877, 883, 109 S.Ct. 2248, 2253, 104 L.Ed.2d 941 (1989) (quoting 94 Stat. 2325). To achieve that goal, the EAJA authorizes awards for fees "incurred by [the prevailing] party in any civil action." 28 U.S.C. § 2412(d)(1)(A). We believe it is consistent with the purpose of the statute and its plain language to require that the civil action for which the party seeks fees be at least a material factor in securing the result sought.[2] *See, e.g., Kunzman,* 817 F.2d at 496.

In concluding that the lawsuit itself, and not other activities engaged in by a party, must have a causal connection to the outcome

---

2. We recognize that attorneys' fees are not limited to the "victor only after entry of a final judgment following a full trial on the merits." H.R.Conf.Rep. 1434, 96th Cong., 2d Sess. 21; *see also Braafladt,* 778 F.2d at 1443–44. And it is true, as Forest Conservation points out, that in some circumstances fee awards include expenses incurred before litigation commences. *See Webb v. Board of Educ. of Dyer County,* 471 U.S. 234,

243, 105 S.Ct. 1923, 1928, 85 L.Ed.2d 233 (1985) ("Some of the services performed before a lawsuit is formally commenced by the filing of the complaint are performed 'on the litigation'" and are, therefore, compensable.). However, the fact that pre-litigation work is sometimes compensable does not mean pre-litigation activities are sufficient alone to make a party a prevailing party.

realized before that party can be entitled to attorneys' fees, we adhere to circuit precedent,[3] as well as the "strong presumption' that the plain language of the statute expresses congressional intent." *Ardestani v. INS*, — U.S. —, —, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991) (quoting *Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). Keeping in mind that the EAJA is a "limited exception" to the American Rule against fee-shifting, *see Pierce v. Underwood*, 487 U.S. 552, 575, 108 S.Ct. 2541, 2555, 101 L.Ed.2d 490 (1988) (Brennan, J. concurring), we can discern no congressional intent to subsidize a party's pre-litigation efforts to convince a government agency that its actions are misguided. The EAJA does not serve to compensate public interest groups for their lobbying efforts, no matter how successful those efforts may be. That the dialogue between concerned citizens and the government in this case may have led the Forest Service to reevaluate the validity of the timber sale means that democracy works; it does not justify an award for attorneys' fees expended on a lawsuit that, according to Forest Conservation's own concession, did not precipitate the outcome.

The district court concluded that Forest Conservation's lawsuit was not a material factor in bringing about the desired result. That conclusion is decisive on this issue as well. According to the district court, District Ranger Davis's recommendation was the sole cause of Devlin's decision to withdraw the sale. Thus, Forest Conservation's efforts may very well have convinced the Forest Service to withdraw the sale *before* the lawsuit was even filed. As far as we are aware, no court has yet divorced the requirement that a party achieve its desired result from the requirement that the lawsuit itself have some causal connection to it.

In the absence of a clear congressional intent to create such an expansive definition of "prevailing party," we decline to construe the EAJA as broadly as the appellants ask. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685, 103 S.Ct. 3274, 3277, 77 L.Ed.2d 938 (1983). Forest Conservation simply has not convinced us that it should be considered a prevailing party in its lawsuit where it has conceded that the lawsuit was not material to the Forest Service's decision to withdraw the sale. We conclude that, under the EAJA, the lawsuit must catalyze the desired change before a plaintiff can be awarded fees as the prevailing party.

IV

At the evidentiary hearing held on February 28, 1991, Forest Conservation offered the testimony of Marriner Orum and Jeff DeBonis. Both were prepared to testify that, from their knowledge of Forest Service procedures and behavior in past sales, the lawsuit must have been a catalytic factor in the withdrawal of the sale. The district court excluded the evidence as "incompetent."

At the hearing, the proposed testimony was offered as expert testimony.[4] The district court apparently accepted the witnesses as experts. However, Judge Jones excluded their testimony, saying simply that it was his "job to make that decision on causation. And I don't find it helpful to have someone say that this evidence you produced motivated a certain person to do a certain thing." Under Rule 702, the admissibility of expert testimony turns on whether it assists the trier of fact. See Fed.R.Evid. 702. As the trier of fact, Judge Jones expressly concluded that this evidence would not help him.

Forest Conservation complains that it was unfair, on the one hand, to exclude the testi-

---

3. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983); *Sablan*, 856 F.2d at 1325 (causal link between lawsuit and relief actually obtained); *Kunzman*, 817 F.2d at 497 (at a minimum lawsuit must be catalyst); *Braafladt*, 778 F.2d at 1444 (same); *Munro*, 650 F.2d at 188 (same). Forest Conservation cites no authority in support of its position. Our prior cases focus on the role of the

lawsuit in determining whether a party was a prevailing party.

4. In its briefs, Forest Conservation offers several new arguments in favor of the admissibility of this testimony. We decline to consider those arguments. *See* Fed.R.Evid. 103(a)(1); *see also United States v. Lara–Hernandez*, 588 F.2d 272, 274 (9th Cir.1978).

mony of its experts but, on the other hand, to let Forest Supervisor Devlin testify as to his motivation for cancelling the sale. Yet Judge Jones refused similar testimony offered by the Forest Service as to other sales, stating "I just need to know what the motivation was on this one." Neither witness was to testify from personal knowledge as to what caused the withdrawal of the timber sale in this case.

■■ Forest Supervisor Devlin's testimony was direct evidence on the issue of motivation. The district court has broad discretion to exclude extrinsic evidence to rebut or to impeach the direct testimony of a witness. *Trust Servs. of America v. United States,* 885 F.2d 561, 569 (9th Cir.1989). Moreover, the court was well aware of the nature of the proposed testimony. Judge Jones had De-Bonis's affidavit before him and Forest Conservation made an offer of proof as to Orum's qualifications and proposed testimony. The exclusion of expert testimony is within the discretion of the trial court; we may therefore only reverse for abuse of discretion or manifest error.[5] *United States v. Arvin,* 900 F.2d 1385, 1388 (9th Cir.1990), *cert. denied,* 498 U.S. 1024, 111 S.Ct. 672, 112 L.Ed.2d 664 (1991). Under the circumstances, we conclude that the district court did not abuse its discretion by excluding the proposed testimony.

AFFIRMED.

---

**5.** Forest Conservation cites *Movie 1 & 2 v. United Artists Communications,* 909 F.2d 1245, 1248–49 (9th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 2852, 115 L.Ed.2d 1020 (1991), as support for the assertion that review should be de novo. Nothing in *Movie 1 & 2* evidences any intent by this circuit to move away from the abuse of discretion standard simply because a party preserved the evidence with an offer of proof. Rather, the standard applied in that case clearly was based on the court's "plenary review" in the summary judgment context. *Id.*