124 F.3d 211
 28 Envtl. L. Rep. 20,031
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
FRIENDS OF THE NESTUCCA, INC., an Oregon nonprofit
corporation, Plaintiff-Appellant,
v.
Rodney E. SLATER, Administrator, Federal Highway
Administration, U.S. Department of Transportation,
Defendant-Appellee.
 No. 96-35081.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 3, 1997
Decided Sept. 11, 1997.
 
 1
 Appeal from the United States District Court for the District of Oregon, No. CV 94-359-JJ; John Jelderks, Magistrate Judge, Presiding.
 
 
 2
 Before: FLETCHER and TASHIMA, Circuit Judges, and SCHWARZER, District Judge.**
 
 
 3
 MEMORANDUM*
 
 
 4
 Friends of the Nestucca, Inc. (Friends) appeals the district court's denial of attorney's fees under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d). The underlying claim was brought by Friends against the Federal Highway Administration (FHwA) under the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370d. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm. Because the parties are familiar with the facts we recite them only as necessary to understand our disposition.
 
 I. Jurisdiction
 
 5
 We first address the FHwA's contention that the district court in this case was not a "court having jurisdiction of that action" under the EAJA. 28 U.S.C. § 2412(d)(1)(A). Subject matter jurisdiction is a condition precedent to an award of attorney's fees. Clark v. Busey, 959 F.2d 808, 810 (9th Cir.1992). Here, the district court dismissed Friends' suit as moot as to Phase I construction and unripe as to Phase II. Friends did not appeal the decision.
 
 
 6
 We have acknowledged the distinction between cases "lacking potential jurisdiction" and those "having potential, but lacking actual jurisdiction." United States v. 87 Skyline Terrace, 26 F.3d 923, 927-28 (9th Cir.1994). In the former category, no attorney's fees are allowed because there is a jurisdictional defect from the moment the case is filed. See, e.g., Clark, 959 F.2d at 811. In the latter category, attorney's fees are permitted because "the district court had the power ultimately to decide the merits of the underlying action." 87 Skyline Terrace, 26 F.3d at 928. We agree with Friends that this latter category includes instances where jurisdiction exists at the beginning of the lawsuit, but it is later defeated by settlement, or by the prevailing party obtaining the relief it desires. Montes v. Thornburgh, 919 F.2d 531, 538 (9th Cir.1990); Andrew v. Bowen, 837 F.2d 875, 877 (9th Cir.1988).
 
 
 7
 This case is like Montes and Andrew, and unlike Clark, in that the jurisdictional defect, lack of ripeness, occurred only because Friends obtained its requested relief, supplementation of the Environmental Assessment (EA). We recognize that Montes and Andrew involved mootness, rather than ripeness. However, it is possible for an agency to be forced by litigation or other events to retreat from the final stages of an activity that is ripe for review to a more preliminary stage in the administrative process where judicial scrutiny is no longer appropriate. That is what Friends asserts occurred here, and we agree. As long as Friends' suit was ripe at the time the case was filed, it falls within the category of "having potential, but lacking actual jurisdiction." Cf. Lockary v. Kayfetz, 917 F.2d 1150, 1153-54 (9th Cir.1990) (ripeness in takings case determined at time the suit was filed).
 
 
 8
 It is undisputed, and we conclude, that Friends' suit was ripe when filed. Agency action was sufficiently final. See 40 C.F.R. § 1501.4(e)(2); Friedman Bros. Inv. Co. v. Lewis, 676 F.2d 1317, 1319 (9th Cir.1982). The legal questions were fit for resolution, and the potential hardship to Friends was high. Thus, we reject the FHwA's jurisdictional argument.
 
 II. Prevailing Party
 
 9
 The district court's determination that Friends was not a prevailing party presents a question of fact "that will be set aside if clearly erroneous or if based on an incorrect legal standard." Oregon Envtl. Council v. Kunzman, 817 F.2d 484, 496 (9th Cir.1987). Friends argues that it played a catalytic role in the FHwA's decision to supplement its EA. To succeed under this theory it must establish a "clear, causal relationship between" its litigation and the FHwA's decision. McQuiston v. Marsh, 707 F.2d 1082, 1085 (9th Cir.1983). Put differently, the lawsuit must be "at least a material factor" in the FHwA's decision. Kunzman, 817 F.2d at 497 (internal quotation marks omitted). In attempting to establish the requisite causal nexus, Friends may rely only on the effects of the lawsuit itself, not pre-litigation efforts. Forest Conservation Council v. Devlin, 994 F.2d 709, 713 (9th Cir.1993).
 
 
 10
 The district court made no errors of law in its analysis. Contrary to Friends' assertion, there is no evidence that the court applied an improper "but for" causation test. It cited controlling Ninth Circuit authority, and held that it could not "conclude that [Friends] suit was a material factor or played a catalytic role." While a more thorough analysis would have been helpful, nothing in the record indicates that the district court began with an "inference against attorney's fees" as Friends argues. Nor will we assume, in the face of an express statement to the contrary, that the district court entertained such an inference simply because it resolved a factual dispute against Friends.
 
 
 11
 We also reject Friends' contention that the court committed an error of law by failing to analyze landslide impacts in light of Friends' claim that the original EA was "inadequate at the time it was written." Friends alleges that the court ignored the fact that its suit was a catalyst in the FHwA's decision to admit "the impacts of the landslides it had always known were highly likely." First, the FHwA never admitted that its original EA was inadequate or that it had "always known" landslides were highly likely. The FHwA asserted in the district court, and continues to assert, that its decision to reconsider and later supplement the EA was, in part, the result of landslides occurring after the original EA had been prepared, but before Friends' suit. However, the agency never conceded that its original EA, written without the knowledge of these later landslides, violated NEPA's procedural requirements.[1] Second, Friends failed to explain how the new landslide information demonstrated that the FHwA had violated NEPA at the time the EA was written (Count 5 in its complaint). Instead, Friends focused on how it had succeeded in getting the FHwA to prepare a supplemental EA in light of new circumstances (Count 4). There was no legal error.
 
 
 12
 Turning to the factual dispute, we note preliminarily that, contrary to Friends' arguments, the district court did not rely solely on the April 5, 1994, letter from FHwA to Friends. That letter was clearly an important part of the court's determination that the FHwA had been engaged in an on-going process of reconsideration before and during the lawsuit. However, the district court also looked at motions made throughout the lawsuit, as well as affidavits. In addition, Friends overstates its case when it equates the April 5 letter's description of the FHwA's proposed reevaluation of Phase II with the reevaluation the FHwA made in 1992. The letter describes a process of far greater scope, including agency coordination and public comment, than that which occurred in 1992.
 
 
 13
 At base, the district court was presented with two competing theories about FHwA's decision to supplement its EA. According to Friends, its suit was at least one material factor in the FHwA's decision. It pointed to the chronology of events to support its view, particularly the close proximity between its motion for summary judgment and the FHwA's decision. See Braafladt v. Board of Governors of the Or. St. Bar Ass'n, 778 F.2d 1442, 1444 (9th Cir.1985) ("[C]hronolgical events are important, although not a definitive factor, in determining whether or not a defendant can be reasonably inferred to have guided his actions in response to plaintiff's lawsuit.").
 
 
 14
 On the other hand, according to the FHwA, Friends' suit was not even one material factor in its decision to supplement its EA. It asserts that it had been planning to take a fresh look at its design for Phase II ever since the landslides occurred during construction, and the public response thereto. However, it could not determine whether a new EA was necessary until it looked at its current Phase II design in light of the new landslide information. This process of reevaluation continued throughout the litigation, as shown by notes of FHwA field work that anticipate a revaluation of the EA in light of the design efforts on Phase II.[2] According to the FHwA, its final conclusion that the EA was inadequate and required supplementation was precipitated by the culmination of its design analysis on Phase II and the publication of new rules for the Northern Spotted Owl.
 
 
 15
 Both of these theories were plausible in light of the record before the district court. Thus, we will not disturb the district court's decision that the FHwA's version of events is the more persuasive one. See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."); Braafladt, 778 F.2d at 1444.
 
 
 16
 Wilderness Soc'y v. Babbitt, 5 F.3d 383 (9th Cir.1993), reinforces our decision. There, the Forest Service argued that its decision to prepare an Environmental Impact Statement seven months after a lawsuit by an environmental organization urging such action was not causally connected to the suit, but instead "flowed logically from an ongoing planning process commenced prior to the lawsuit." Id. at 387. The environmental organization emphasized the chronology of events. Id. at 386. We held that the district court's "decision to credit the Service's explanation is not implausible and, based upon this factor alone, the court's decision would not be considered an abuse of discretion." Id. at 387.
 
 
 17
 We ultimately reversed the district court in Wilderness Society only because the record revealed "extraordinary circumstances." Id. The agency's decision had been made at a different level of management than normal, and the district court had disregarded direct testimony by a government official that the lawsuit had impacted the agency's decision. Id. No such extraordinary circumstances are present here. The district court's decision was not clearly erroneous.
 
 
 18
 AFFIRMED.
 
 
 
 **
 Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit, except as provided by Ninth Cir. R. 36-3
 
 
 [1]
 The existence of landslides after the original EA, but before Friends' suit also refutes Friends' argument that it is "implausible" for the FHwA to assert, given the Friends' long-stated contention that the original EA was inadequate, that new landslide information, not litigation, materially influenced the agency's decision to supplement its EA
 
 
 [2]
 In fact, the record includes a document from August 1, 1994, two months before Friends' motion for summary judgment, which indicated that the FHwA intended to reevaluate its EA on November 1, 1994. The actual decision to supplement EA was announced to the district court only three weeks after that predicted November 1, 1994 date, thus giving credence to the FHwA's assertion that its decision was the result of its on-going planning efforts rather than Friends' legal actions