283 F.3d 1146
 UNITED STATES of America, Plaintiff-Appellant,
v.
REAL PROPERTY AT 2659 ROUNDHILL DRIVE, ALAMO, CALIFORNIA, Defendant-Appellee,
Robert Fitzstephens; Wilson Young; Keith Slipper; Joseph Ippolito; Michael Thaler; Mark Schwab, Claimants-Appellees.
 No. 00-16772.
 United States Court of Appeals, Ninth Circuit.
 Submitted August 16, 2001.*
 Filed March 18, 2002.
 
 COPYRIGHT MATERIAL OMITTED Robert S. Mueller, III, U.S. Attorney; Robert D. Ward, Assistant U.S. Attorney; J. Douglas Wilson, Assistant U.S. Attorney for the Northern District of California, San Francisco, CA, for the appellant.
 Dena R. Thaler, Law Office of Dena R. Thaler, Oakland, CA, for the appellees.
 Appeal from the United States District Court for the Northern District of California; D. Lowell Jensen, District Judge, Presiding. D.C. No. CV-94-3525-DLJ.
 Before WOOD, Jr.,** KOZINSKI, and O'SCANNLAIN, Circuit Judges.
 Opinion by Judge O'SCANNLAIN; Dissent by Judge KOZINZKI.
 O'SCANNLAIN, Circuit Judge:
 We are asked to decide whether the litigation position of the United States Department of Justice was substantially justified when it continued to advance a forfeiture claim after the Supreme Court clarified the law to the contrary.
 
 
 1
 * The United States appeals from the district court's judgment, pursuant to 28 U.S.C. § 2412(d)(1)(A) of the Equal Access to Justice Act ("EAJA"), awarding Robert Fitzstephens, Wilson Young, Keith Slipper, Joseph Ippolito, Michael Thaler, and Mark Schwab ("purchasers") attorney's fees and costs arising from the government's in rem forfeiture proceedings.
 
 
 2
 In 1990, Anthony and Kathryn Payton purchased real property located at 2659 Roundhill Drive, Alamo, California ("property") for $682,500. The Paytons paid $558,310 in cash and financed the remainder through a loan from World Savings and Loan Association ("World") secured by a mortgage and deed of trust, which was not recorded until January 24, 1993. Pursuant to 21 U.S.C. § 881(a)(6),[1] the government instituted forfeiture proceedings on October 5, 1994 in the U.S. District Court for the Northern District of California alleging that the Paytons used the proceeds of illegal drug trafficking activity, which began in 1974, to purchase the property. On October 19, 1994, the United States arrested the property and recorded a notice of lis pendens in the Contra Costa County Recorder's Office.
 
 
 3
 World filed a claim in the government's forfeiture action asserting an innocent lienholder interest worth $340,000 — the amount owed World by the Paytons, consisting of the principal and accumulated interest, which the government did not dispute. In settlement negotiations, the United States offered to pay off World's interest when and if the government obtained a judgment of forfeiture and successfully marketed the property. World refused. Instead, since the Paytons had been in mortgage default for a year, World began immediate foreclosure proceedings under state law by recording a Notice of Default with the Contra Costa County Recorder's Office.
 
 
 4
 The Paytons petitioned to stay the foreclosure, but the federal district court denied their motion and allowed World to continue the foreclosure pursuant to state law. World then held a non-judicial foreclosure sale and sold the property for $354,000 on May 16, 1995 to purchasers, who had formed a partnership on the morning of the sale for that purpose. According to appraisers, the fair market value of the property was between $590,000 and $625,000. After the sale, World withdrew its claim in the government's forfeiture action.
 
 
 5
 The purchasers then moved to dismiss the government's forfeiture complaint or for summary judgment under Rule C(6) of the Rules of Admiralty.[2] Although the purchasers' claims were untimely, the district court exercised its discretion to allow them. The purchasers made three arguments: (1) the government had abandoned the property by consenting to World's foreclosure sale; (2) the district court lacked in rem jurisdiction over the property because the foreclosure sale extinguished any junior claims (here, the United States's) arising after the purchasers' interest vested, which was January 24, 1993 when World recorded its deed of trust; and (3) they were "innocent owners" and thus immune from forfeiture proceedings.[3]
 
 
 6
 The district court ruled that (1) the government's acquiescence in the foreclosure sale did not constitute a release of its forfeiture interest in the property; (2) the government's interest vested prior to the purchasers' interest by virtue of 21 U.S.C. § 881(h),[4] the forfeiture statute's "relation back" provision; and (3) the purchasers were not "innocent owners" since the notice of lis pendens was sufficient to alert them to the forfeiture proceedings. While the forfeiture action was pending, the purchasers sold the property (with the court's approval) and placed the proceeds in escrow. The district court granted summary judgment to the United States, which left the purchasers sustaining a net loss on their investment in the Roundhill property. The purchasers appealed.
 
 
 7
 We reversed, holding that the government had no legal interest in the property. United States v. 2659 Roundhill Drive, 194 F.3d 1020, 1027 (9th Cir.1999) ("Roundhill I"). We applied United States v. 92 Buena Vista Ave., 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993), which held that the relation-back rule of 21 U.S.C. § 881(h) cannot be invoked until a final judgment of forfeiture has been entered; the United States had never obtained a final judgment. Therefore, according to Buena Vista, the government's interest in the Roundhill property could not have related back to 1974 (when the Paytons engaged in drug trafficking), but rather dated back only to October 19, 1994, when it recorded its lis pendens. Since the lis pendens was recorded after the date World recorded its deed of trust (which also was the effective date of the purchasers' interest) the government's interest was extinguished by normal operation of long-standing California foreclosure law.[5] Thus, the purchasers took title to the property free and clear of the government's interest. Roundhill I, 194 F.2d at 1027.
 
 
 8
 On remand in district court, the purchasers moved for attorney's fees and costs as the prevailing party under the EAJA, 28 U.S.C. § 2412. The district court ruled that "after the foreclosure sale [in 1995], the government's position was no longer reasonable in light of federal and California law" and awarded the purchasers over $57,000. The government timely appeals the attorney's fees award.
 
 II
 
 9
 The EAJA provides that a district court "shall award to a prevailing party ... fees and other expenses ... incurred by that party in any civil action ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." 28 U.S.C. § 2412(d)(1)(A) (emphasis added).
 
 
 10
 First, the United States does not dispute on appeal that purchasers are a "prevailing party" under the EAJA. Roundhill I established that the purchasers had a property interest superior to the United States's, and the foreclosure sale extinguished the government's claim. Therefore, the purchasers prevailed on a "significant issue in litigation which achieve[d] some of the benefit [they] sought in bringing suit." Nat'l Wildlife Fed'n v. Fed. Energy Regulatory Comm'n, 870 F.2d 542, 544 (9th Cir.1989); see also Perez-Arellano v. Smith, 279 F.3d 791, 794 (9th Cir. 2002) (applying Buckannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001), to the EAJA's definition of "prevailing party" to require a "material alteration of the legal relationship of the parties") (internal quotation marks omitted).
 
 
 11
 The question, of course, is whether the government's position was substantially justified. The district court concluded that it was not. Thus, we must ask whether the district court's decision was based on an erroneous conclusion of law or if the record contains no evidence on which the district court rationally could have based its decision. Bullfrog Films, Inc. v. Wick, 959 F.2d 782, 784 (9th Cir.1992) (stating the standard for determining whether a district court has abused its discretion).[6]
 
 
 12
 "`Substantial justification' under the EAJA means that the government's position must have a `reasonable basis both in law and in fact,' i.e., the government need not be `justified to a high degree,' but rather `justified in substance or in the `main' — that is, justified to a degree that could satisfy a reasonable person." Wang v. Horio, 45 F.3d 1362, 1364 (9th Cir.1995) (quoting Bay Area Peace Navy v. United States, 914 F.2d 1224, 1230 (9th Cir.1990)). We apply a "reasonableness standard," Flores v. Shalala, 49 F.3d 562, 569 (9th Cir.1995); the mere fact that the United States failed to prevail in the forfeiture action is insufficient to establish that its position was not substantially justified. See Kali v. Bowen, 854 F.2d 329, 332 (9th Cir.1988).
 
 
 13
 The EAJA defines the "position of the United States" as not only its litigation position in the civil action, but also the government's action upon which the civil suit is based. 28 U.S.C. § 2412(d)(2)(D). Therefore, the government must have had to have been substantially justified in both its original action (here, initiating forfeiture) and pursuing that action in court. Gutierrez v. Barnhart, 274 F.3d 1255, 1259 (9th Cir.2001); Kali, 854 F.2d at 332. The parties do not dispute that the forfeiture action was reasonable; rather, purchasers argue that the government was not reasonable in continuing its civil action against them once World's foreclosure sale occurred.[7]
 
 
 14
 The government argues that its post-foreclosure litigation position was substantially justified because Roundhill I applied the relation-back doctrine in a novel context, and the district court's award of attorney's fees was based on its being reversed. Of course, Roundhill I's rejection of the government's position does not establish that it was not substantially justified. Indeed, at first glance the government's litigation position certainly sounded reasonable enough: the relation-back doctrine of 21 U.S.C. § 881(h) grants the government an interest in property purchased with proceeds from illegal drug activity, starting from the time the illegal events occurred. Thus, because the Paytons sold drugs in 1974 and used the proceeds to buy the property in 1990, the government might well have had an interest in the property beginning in 1974.
 
 
 15
 However, in 1993, over a year before the government filed its lis pendens, the Supreme Court clearly explained that the relation—back doctrine cannot be applied until a final judgment of forfeiture has been entered. Buena Vista, 507 U.S. at 126-29, 113 S.Ct. 1126; see Roundhill I, 194 F.3d at 1027 ("[The government's] interest could not yet have related back to the time of the acts giving rise to the forfeiture claim" because "the government's claim had not yet been adjudicated."); United States v. 6640 S.W. 48th St., 41 F.3d 1448, 1451 (11th Cir.1995) (title to forfeited property vests in government on date of forfeiture judgment); Counihan v. Allstate Ins. Co., 25 F.3d 109, 112 (2d Cir.1994) (relation-back provision of forfeiture statute cannot serve to transfer ownership of property until there is a final judgment of forfeiture).
 
 
 16
 Because the government could not gain the benefit of the relation-back rule before it obtained a judgment of forfeiture, the government's interest in the property could not have vested until it recorded its lis pendens on October 19, 1994. Therefore, its interest remained junior to World's trust deed, which had been recorded over one year earlier in January 1993. Based on black-letter principles of California property law, World's foreclosure sale extinguished the government's junior interest in the property, and the purchasers took title of the property free of the government's junior lien. Sumitomo Bank v. Davis, 4 Cal.App.4th 1306, 1314, 6 Cal.Rptr.2d 381 (1992) (foreclosure sale extinguishes all interests in the real estate junior to the mortgage being foreclosed); Sichler v. Look, 93 Cal. 600, 610, 29 P. 220 (Cal.1892) (same). In light of these well-established principles, from the time of the foreclosure on, the government's position was without merit and not substantially justified.[8]
 
 
 17
 Of course, the government was initially granted summary judgment in the district court, which adopted the government's argument that its interest vested prior to the purchasers' interest by virtue of the forfeiture statute's relation-back provision, 21 U.S.C. § 881(h). It is important to note, however, that when we reversed in Roundhill I, we applied preexisting law as declared by the Supreme Court. 194 F.3d at 1027 ("[W]e do not extend Buena Vista. ..."). As such, the fact that the district court erroneously granted the government's motion for summary judgment cannot itself make the government's position substantially justified. Ore. Natural Res. Council v. Madigan, 980 F.2d 1330, 1332 (9th Cir.1992) ("`Our precedents do not treat the district judge's agreement with the government in the initial case as conclusive as to whether or not the government was reasonable.'" (quoting United States v. 1984 Ford Van, 873 F.2d 1281, 1282 (9th Cir.1989))). Nor can the district court's decision retroactively make the government's position substantially justified; the law was already clear when the government continued its pursuit of purchasers after World's foreclosure sale.
 
 
 18
 Furthermore, the district court did not solely rely on the fact that its decision had been reversed on the merits when it determined that the government's position had not been substantially justified. While the district court recognized that Roundhill I "made clear" the Buena Vista relation-back issue, any time an appellate court corrects a lower court's erroneous interpretation of the law it presumably makes the issue presented "more clear." Just as a reversal does not per se make a position not substantially justified, such position is not presumptively reasonable simply because two courts disagreed. The law was already established by Buena Vista and basic California property law, and, as the district court noted, that fact — not the reversal — made the government's position unreasonable.
 
 
 19
 Finally, we note that even if the question presented in Roundhill I was a case of first impression, that fact alone does not render the United States's litigation position substantially justified. Gutierrez, 274 F.3d at 1261 ("[T]here is no per se rule that EAJA fees cannot be awarded where the government's position contains an issue of first impression."). In Gutierrez, we rejected the United States's attempt to fit its litigation position into a "small category" of cases that would make its position justified. Id. at 1260. We held that even though the government's position had initially prevailed at the district court, only later to be reversed by this court on a matter of first impression, the district court erred in finding that the government's litigation position was substantially justified and denying attorney's fees. Id. at 1260-61. We emphatically declared that "[w]e have never held that the government is automatically shielded from a fee award because its argument involves any issue on which this court has not ruled." Id. at 1262.
 
 
 20
 Here, the district court did not abuse its discretion in determining that the government's position was not substantially justified and awarding attorney's fees and costs.[9]
 
 III
 
 21
 The government also contends that its position was substantially justified because, had the district court not allowed purchasers to file their untimely claims, it would have been awarded judgment by default. We are not persuaded. The plain language of Rule 6(C) provides that claims must be filed within ten days of service of process or "within such additional time as may be allowed by the court." Here, the district court exercised its discretion and allowed the late filings. Roundhill I, 194 F.3d at 1024 ("[T]he district court has `discretion to overlook the failure to conform to the requirements of Rule C(6).'" (quoting United States v. 2930 Greenleaf St., 920 F.Supp. 639, 644 (E.D.Pa.1996))). The government has not convinced us that the district court abuses its discretion in so doing.
 
 
 22
 AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument. Fed.R.App.P. 34(a)(2)
 
 
 **
 Honorable Harlington Wood, Jr., Senior Circuit Judge, United States Court of Appeals for the Seventh Circuit, sitting by designation
 
 
 [1]
 Section 881(a)(6) provides:
 The following shall be subject to forfeiture to the United States and no property right shall exist in them: ... All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.
 
 
 [2]
 In rem forfeitures are conducted in accordance with the Supplemental Rules for Certain Admiralty and Maritime ClaimsE.g., United States v. One Dairy Farm, 918 F.2d 310, 311 (1st Cir.1990). Rule C(6) provides that claims must be filed within ten days of service of process "or within such additional time as may be allowed by the court."
 
 
 [3]
 Pursuant to 21 U.S.C. § 881(a)(6), "innocent owners" have a defense against the government's forfeiture action:
 [N]o property shall be forfeited ... to the extent of the interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner.
 
 
 [4]
 "All right, title, and interest in property described in subsection (a) of this section shall vest in the United States upon commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 881(h)
 
 
 [5]
 California law provides that "when a person purchases property from a trustee in a nonjudicial foreclosure proceeding, the purchaser's interest `relates back' to the time the original deed or trust was recorded. The [foreclosure] sale thus serve[d] to extinguish any liens or encumbrances that attached to the real property after the deed of trust."Roundhill I, 194 F.3d at 1026 (internal citations omitted).
 
 
 [6]
 We review the district court's decision to award fees under the EAJA for an abuse of discretionCorbin v. Apfel, 149 F.3d 1051, 1052 (9th Cir.1998).
 
 
 [7]
 The government bears the burden of showing that its position was substantially justifiedthroughout the forfeiture proceedings. United States v. 22249 Dolorosa St., 190 F.3d 977, 982 (9th Cir.1999).
 
 
 [8]
 The dissent argues that because the government believed that the purchasers were on constructive notice of the property's status due to the lis pendens, its litigation position was substantially justified because the purchasers could not claim the innocent owner defense. A notice of lis pendens alone, however, is not sufficient to preclude an innocent owner defense. Not only must the purchaser be on notice that the property is the subject of a forfeiture action, but he or she must also haveactual knowledge that the previous owner engaged in illegal acts. See Roundhill I, 194 F.3d at 1028; United States v. 1980 Red Ferrari, 827 F.2d 477, 478 (9th Cir.1987).
 There is no evidence in the record that the purchasers knew of the Paytons' illicit drug activities or avoided knowledge through "willful blindness." Roundhill I, 194 F.3d at 1028 (internal quotation marks omitted). The requirement of actual notice to negate an innocent owner defense was likewise not "new" when Roundhill I reversed the district court's ruling that purchasers were not innocent owners. Indeed, in Roundhill I it was necessary for us to clarify "certain misconceptions of the law evident in the briefs and in the district court's holding" regarding the issue of innocent ownership. Id. at 1027.
 
 
 [9]
 Finally, under the EAJA the amount of attorney's fees and costs must be reasonablePerez-Arellano, 279 F.3d at 793. The United States does not argue that the amount of the district court's award was unreasonable.
 
 
 KOZINSKI, Circuit Judge, dissenting:
 
 23
 1. To be liable under the Equal Access to Justice Act, the United States must take a position in litigation that is not just wrong, but so wrong that it is not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). This means that the position must lack any "reasonable basis in both law and fact." Pierce v. Underwood, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (internal quotation marks omitted). An incorrect position is substantially justified under the EAJA if "a reasonable person could think it correct." Id. at 566 n. 2, 108 S.Ct. 2541. Pierce held that this test is similar to the test for sanctions against parties who resist discovery unreasonably: If "reasonable people could differ" about the appropriateness of the action, sanctions are unwarranted. Id. at 565, 108 S.Ct. 2541 (internal quotation marks and citations omitted); see also Reygo Pac. Corp. v. Johnston Pump Co., 680 F.2d 647, 649 (9th Cir.1982) (holding that, under Fed. R.Civ.P. 37(a)(4), a discovery request is "substantially justified" if "reasonable people could differ as to whether the party requested must comply").
 
 
 24
 2. Here, reasonable people can, and did, think the government's position was justified. Notably, the district court believed the position of the United States was not only reasonable, but correct. The district court granted the United States summary judgment, accepting its arguments.
 
 
 25
 While an initial victory in the district court does not conclusively establish substantial justification, Or. Natural Res. Council v. Madigan, 980 F.2d 1330, 1332 (9th Cir.1992), it weighs heavily in the government's favor. District courts make mistakes, but they generally reject legal positions that are so baseless that reasonable people could not accept them. It is a rare case where the arguments of the party that wins in the district court are not merely wrong but laughable.
 
 
 26
 The majority discounts the significance of the district court's initial ruling by arguing that we reversed the district court under United States v. 92 Buena Vista Ave., 507 U.S. 111, 113 S.Ct. 1126, 122 L.Ed.2d 469 (1993), a pre-existing Supreme Court case. Maj. Op. at 1152 (citing United States v. 2659 Roundhill Dr., 194 F.3d 1020, 1027 (9th Cir.1999) [hereinafter, Roundhill I]). But it was hardly a foregone conclusion that Buena Vista negated, or even addressed, the government's arguments. In reversing the district court, the Roundhill I panel made it clear that this was a tough case. The panel noted that Buena Vista arose "from a very different factual context" and that the panel was "apply[ing] its principles in a different context." Roundhill I, 194 F.3d at 1027. The Roundhill I panel was right, of course, because Buena Vista does not address this case's most complicated features. The government's argument was that a non-judicial foreclosure sale did not terminate its forfeiture right, because the foreclosure occurred after the government filed a lis pendens and forfeiture action but before the court entered a forfeiture judgment. Buena Vista says nothing about that situation; it doesn't talk about mortgages or foreclosure sales at all. The majority finds that "well-established principles" rendered the government's position substantially unjustified after the foreclosure sale, Maj. Op. at 1152, but neither the parties nor the Roundhill I panel cited any prior case for the proposition that a nonjudicial foreclosure sale terminates the government's vested forfeiture interest. As the district court noted, it was Roundhill I, not Buena Vista, that "made clear" the dispositive legal issues. This weighs against finding the government's position not substantially justified. While the government is not "automatically shielded" from EAJA liability when no cases are on point, Gutierrez v. Barnhart, 274 F.3d 1255, 1262 (9th Cir.2001), an "absence of adverse precedent" weighs against a finding that a position was not substantially justified. Bay Area Peace Navy v. United States, 914 F.2d 1224, 1231 (9th Cir.1990) (citing Or. Envtl. Council v. Kunzman, 817 F.2d 484, 498 (9th Cir.1987)).
 
 
 27
 3. The majority holds that the government's position stopped being substantially justified when claimants bought the property at the foreclosure sale. See Maj. Op. at 1152. It reasons that "well-established principles" dictated that "the government's interest in the property could not have vested until ... October 19, 1994," and therefore the mortgage company's "foreclosure sale extinguished the government's junior interest in the property." Id. But this short-changes the government's position. Not only do I doubt that the government's position wasn't substantially justified, I am not convinced that the Roundhill I panel got it right; though its opinion is binding on us, the case easily could — and in my view should — have been decided the other way. Other circuits, and the Supreme Court, very well may.
 
 
 28
 The government's interest in the property wasn't "junior" at all. Under 21 U.S.C. § 881(h), title to the property "vest[s] in the United States upon commission of the act giving rise to forfeiture." 21 U.S.C. § 881(h). Buena Vista interpreted this to mean that, while the government doesn't literally have title to the property before a final forfeiture judgment, the government does get an executory interest in the property as soon as its owners commit their illegal act. Once there is a final judgment of forfeiture, a "retroactive vesting" occurs, giving the government outright ownership of the property that dates back to the time of the illegal act. Buena Vista, 507 U.S. at 125, 113 S.Ct. 1126. Consequently, while it is clear that the government did not own the defendant property before the forfeiture judgment, the government did have an executory interest in the property in 1990, when the Paytons bought it with money they earned from illegal drug trafficking. Because the mortgage company did not record its lien until 1993, the government could reasonably argue that its senior executory interest survived the foreclosure.
 
 
 29
 The claimants' best response was to argue that they were "innocent" buyers who were therefore able to trump section 881(h)'s "relate back" provision. See 21 U.S.C. § 881(a)(6). The government argued that the claimants were on notice that the property might be tainted, and therefore were not innocent buyers. See United States v. 10936 Oak Run Circle, 9 F.3d 74, 76 (9th Cir.1993). Considerable evidence supported this argument. The claimants bought the property after the government filed a lis pendens, which gave notice to the world that the United States sought the judicial forfeiture of the property under drug forfeiture statutes. At least three of the six claimants knew about the lis pendens before purchasing the property. The government was surely justified in arguing that the lis pendens gave constructive notice of the forfeiture action to the other purchasers. See In re The Brickyard, 735 F.2d 1154, 1158 (9th Cir. 1984); Cal. Civ.Code § 3146 (after a lis pendens is filed, purchasers are "deemed to have constructive notice of the pendency of the action"). The majority says that the claimants did not have "actual knowledge" that the government sought forfeiture because of drug crimes, Maj. Op. at 1152 n. 8 (emphasis in original), but the government was justified in arguing that they did. The lis pendens specifically says that the government sought forfeiture "pursuant to Title 21, United States Code, Section 881." Because 21 U.S.C. § 881 only applies in drug cases, the government was justified in arguing that claimants had notice that a drug forfeiture was afoot. It's true that Roundhill I held that a lis pendens "does not necessarily impart knowledge of the previous owner's illegal acts" because the government could have filed it as part of a non-criminal proceeding. Roundhill I, 194 F.3d at 1028. But that general rule doesn't make sense here, where the lis pendens makes it obvious that the government accuses the property's purchasers of drug offenses.
 
 
 30
 The purchase price gave the government additional reason to justifiably argue that the claimants were not innocent owners. Knowing there was a dispute over the property, the claimants purchased it for only $354,000-about $200,000 less than its price five years earlier and around $230,000 less than its appraised market price. The government was justified in arguing that this low price was circumstantial evidence that the claimants knew about the government's allegations against the Paytons.
 
 
 31
 4. By definition, the EAJA only comes into play when the government loses. Yet Congress made it clear that it did not intend that courts award EAJA fees every time the government does not prevail in its substantive claims. The EAJA is meant to help private parties challenge unjustifiable government actions. By subsidizing their attorney fees, the EAJA makes it harder for the government to use its superior financial resources to wear them down, even though its position is frivolous. See Forest Conservation Council v. Devlin, 994 F.2d 709, 712 (9th Cir.1993) (O'Scannlain, J.) ("The purpose behind the EAJA is `to diminish the deterrent effect of seeking review of, or defending against governmental action because of the expense involved in securing the vindication of ... rights.'") (quoting Sullivan v. Hudson, 490 U.S. 877, 883, 109 S.Ct. 2248, 104 L.Ed.2d 941 (1989)) (alteration in original). But when the underlying case is close, as here, EAJA fees are simply not appropriate. See Hoang Ha v. Schweiker, 707 F.2d 1104, 1106 (9th Cir.1983) (declining to award fees when the government argues for "a novel but credible extension or interpretation of the law").
 
 
 32
 After today's ruling, it's hard to imagine a case where the government will not have to pay fees after losing. The district court adopted the government's position, and we reversed only after noting there was no case directly on point. If that's not substantial justification, what is?